**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| COFINE, S.A.P.I. de C.V., SOFOM E.N.R., | ) | 3:25-CV-00475 (SVN) |
| *Plaintiff,* | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT SEAN MCNISH, | ) | February 9, 2026 |
| *Defendant.* | | |

**RULING ON MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

This breach of contract action arises out of three loan agreements under which Plaintiff Cofine, S.A.P.I. de C.V. SOFOM E.N.R. ("Cofine") has loaned money to McNish Marketing, Ltd., S.A. de C.V. ("MML"). Cofine asserts one count of breach of contract, alleging that Defendant Robert Sean McNish, MML's chairman, contracted to personally guarantee repayment of the loans in the event of MML's default, and is thus jointly and severally liable for all amounts owed by MML under the loans and related promissory notes. McNish moves to dismiss Cofine's claim under Federal Rule of Civil Procedure 12(b)(7), asserting that Cofine failed to join an indispensable party to the action by failing to sue MML, the original borrower. In the alternative, McNish argues that this case should be dismissed under *forum non conveniens*, asserting that a Mexican court would be better positioned to resolve this dispute. Cofine opposes McNish's motion.

For the reasons explained below, the Court holds that Cofine did not fail to join an indispensable party, but grants McNish's motion to dismiss on *forum non conveniens* grounds.

## I.    FACTUAL BACKGROUND

The Court accepts the following allegations in Cofine's First Amended Complaint ("FAC"), ECF No. 17, as true for purposes of deciding McNish's motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Cofine is a Mexican corporation.  ECF No. 17 ¶ 1.  McNish resides in Connecticut, and is a citizen of the State of Connecticut for diversity jurisdiction purposes.  *Id.* ¶ 2.  Cofine alleges that the Court has subject matter jurisdiction because there is complete diversity between the parties and the amount in controversy exceeds $75,000.  *Id.* ¶ 3.

Several agreements among relevant entities and McNish are pertinent to this case:  a Guaranty Agreement executed on June 24, 2021, and three Loan Agreements (together with associated promissory notes) entered into in 2023.  Cofine has submitted all of these agreements to the Court in Spanish, and has included English translations of the Guaranty Agreement and the three Loan Agreements—but has not included English translations of the promissory notes that accompany the Loan Agreements.  *See* Guaranty Agr., ECF No. 17-7 (Spanish) & ECF No. 17-8 (English); First Loan Agr. ECF No. 17-1 (Spanish) & ECF No. 17-4 (English); Second Loan Agr., ECF No. 17-2 (Spanish) & ECF No. 17-5 (English); Third Loan Agr., ECF No. 17-3 (Spanish) & ECF No. 17-6 (Spanish); First Promissory Note, ECF No. 17-9 (Spanish); Second Promissory Note, ECF No. 17-10 (Spanish); and Third Promissory Note, ECF No. 17-11 (Spanish).

A.  Guaranty Agreement

On June 24, 2021, various relevant parties executed an irrevocable trust guaranty agreement with a right of reversion.  ECF No. 17 ¶ 6.  In the Guaranty Agreement, MML is identified as "Trustor and Successor Trustee"; Cofine is identified as "Primary Trustee"; Cofine's Fiduciary Division is identified as "Fiduciary"; and Defendant McNish is identified as "Bailee." ECF No. 17-8 at 2.

Under the Guaranty Agreement, MML—who was represented in the transaction by McNish—contributed certain real estate into a trust, as security for its existing and future loan obligations to Cofine and its affiliates. *See id.* at 2–3. Specifically, MML contributed two parcels of land in Manzanillo, Colima, to a trust "in order to guarantee the payment" of its obligations to Cofine, the "primary trustee." *Id.* at 4; McNish Decl., ECF No. 27-1 at 32 ¶ 11. This guarantee, by its terms, extended to "any other obligation that may be acquired in accordance with the purposes of this trust." ECF No. 17-8 at 4.

MML appointed Cofine's "fiduciary division" as the fiduciary of the trust in order to ensure that the real estate (the "Trust Property") would guarantee full and timely payment owed under existing and future credit agreements between the parties to the Guaranty Agreement and Cofine. *Id.*; *see also id.* at 10. Pursuant to the agreement, McNish, as bailee, continued to hold "material possession" of the real estate, and could exploit it as he wished, *id.* at 7, 12, but MML transferred ownership of the real estate to Cofine's fiduciary division, *id.* at 10–11. MML retained a right of reversion, such that ownership of the real estate would return to MML upon the satisfaction of all of its payment obligations to Cofine. *Id.* at 11, 14. On the other hand, if Cofine were to notify its fiduciary division that MML defaulted on its payment obligations to Cofine, the fiduciary division was to initiate an "Extrajudicial Alienation Procedure," *id.* at 13—essentially a non-judicial foreclosure process for the Trust Property.

The Guaranty Agreement is governed by Mexican law. *Id.* at 35. According to McNish, MML and Cofine are engaged in ongoing litigation in Mexico concerning the enforceability of the Guaranty Agreement and the trust through which Cofine's fiduciary division took ownership of the real property. ECF No. 27-1 at 32–33 ¶ 12. In that action, MML alleges that the structure of the guaranty and trust create a conflict of interest under Mexican law, because the trustee

responsible for selling the Trust Property in the event of default (Cofine's fiduciary division) is also affiliated with a beneficiary of the sale proceeds: Cofine itself. *Id.* On that basis, MML seeks to declare the Guaranty Agreement unenforceable in its entirety in the Mexican litigation. *Id.*

B. Loan Agreements and Promissory Notes

In addition to the Guaranty Agreement, Cofine, McNish, Cofine's "fiduciary division," and MML also entered into at least three loan agreements in 2023.

First, in January of 2023, the parties entered into a simple line of credit agreement under which Cofine granted MML (the "borrower") a loan of MX$ 20,600,000. ECF No. 17 ¶ 5(a); ECF No. 17-4 at 8–9. McNish was declared the "guarantor and joint obligor" under this agreement, ECF No. 17-4 at 2, and agreed to "guarantee the obligations of the [borrower, MML] arising from this [a]greement" by signing the related promissory note, *id.* at 5–6, 13 (naming McNish a "Solidary Debtor" in accordance with various provisions of Mexican law). McNish therefore "guarantee[d] full compliance with the Loan repayment" and MML's other obligations under the First Loan Agreement. *Id.* at 13. Cofine's fiduciary division granted Cofine (and any other lender that might loan funds under the First Loan Agreement) a "fiduciary guarantee" over "the rights they hold" in certain property, including the Trust Property referenced in the Guaranty Agreement. *Id.* at 14.

Second, in June of 2023, the parties executed a substantially similar agreement under which Cofine granted MML a loan of MX$ 4,150,000, secured by a mortgage on the Trust Property owned by Cofine's fiduciary division. *See* ECF No. 17 ¶ 5(b); ECF No. 17-5 at 2–4; 9. McNish was again named a guarantor and joint obligor, and agreed to guarantee MML's obligations under the loan agreement by endorsing a promissory note. *Id.* at 6–7, 14.

Third, in November of 2023, the parties executed a substantially similar agreement under which Cofine granted MML a loan of MX$ 7,130,000, again secured by a mortgage on the Trust

Property that was owned by Cofine's fiduciary division pursuant to the Guaranty Agreement.  *See* ECF No. 17-6 at 7–10.  Here, likewise, McNish, as joint obligor and guarantor, agreed to "guarantee the full payment of the Credit, in their own right."  *Id.* at 15.  Both the second and third Loan Agreements identify Mexico's national bank of foreign trade, or "Bancomext," as providing funding for the loans.  *See* ECF No. 17-5 at 6–7, 9; *see also* ECF No. 17-6 at 6–7, 10.

All three Loan Agreements are governed by Mexican law, and the parties submit to the jurisdiction of Mexican courts for their interpretation.  *See* ECF No. 17-4 at 22; ECF No. 17-5 at 23; ECF No. 17-6 at 22.

The associated promissory notes were submitted to the Court in Spanish only, without accompanying English translations.  *See* ECF Nos. 17-9 through 17-11.  Thus, the Court does not endeavor to summarize them here.

### C.  The First Amended Complaint

Cofine alleges that MML has now defaulted on its obligations under the Loan Agreements and promissory notes by failing to make required payments in accordance with their terms.  ECF No. 17 ¶ 11.  Likewise, it alleges that McNish himself has defaulted on his joint and several obligations under the loan agreements and promissory notes.  *Id.* ¶¶ 12–13.  Cofine notified McNish of MML's defaults and obligations under the loans and demanded payment from him on three occasions.  *Id.* ¶ 17.  As of June 6, 2025, McNish allegedly owes Cofine a total of more than MX$ 34 million.  *Id.* ¶ 23.  Cofine's amended complaint states one cause of action for breach of the "Loans and promissory notes."  *Id.* ¶¶ 26–32.

## II.    RULE 12(b)(7) MOTION

McNish has moved to dismiss this action on two grounds:  (1) under Rule 12(b)(7), for Cofine's alleged failure to join an indispensable party; and (2) under the doctrine of *forum non conveniens*.

First, the Court holds that MML is neither a necessary nor an indispensable party to this action, so McNish's motion to dismiss is denied, insofar as it is brought under Rule 12(b)(7).

A. <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(7) provides that an action may be dismissed for failure to join an indispensable party. Federal Rule of Civil Procedure 19, in turn, "sets forth a two-step test for determining whether the court must dismiss an action for failure to join an indispensable party." *Viacom Intern., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).

First, the Court "must determine whether the absent party belongs in the suit, *i.e.*, whether the party qualifies as a 'necessary' party under Rule 19(a). Under that rule, a party is necessary if "in that [party's] absence, the court cannot accord complete relief among the existing parties," or if the party "claims an interest relating to the subject of the action" such that proceeding would "impair or impede the [third party's] ability to protect the interest" or would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(A)–(B). It is insufficient for a third party to have "even a very strong interest in" or be "adversely affected by" the outcome of the litigation. *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 387 (2d Cir. 2006). "Rather, necessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired *because of* that party's absence from the litigation." *Id.* If the third party does not qualify as necessary under Rule 19(a), then the Court "need not decide whether its absence warrants dismissal under Rule 19(b)." *Viacom Intern., Inc.*, 212 F.3d at 724.

If the party is necessary but joinder is not feasible for jurisdictional or other reasons, the Court then determines whether the party is "indispensable" under Rule 19(b), such that the action must be dismissed. *Id.* Here, McNish contends that joinder of MML would destroy complete diversity, as both Cofine and MML are Mexican citizens for purposes of diversity jurisdiction.

ECF No. 27-1 at 2.  Thus, he requests that the Court find MML is indispensable and, in turn, dismiss the action.  *Id.* at 23.

A party is indispensable when "in equity and good conscience, the party is one without whom the action between the remaining parties cannot proceed."  *Am. Trucking Ass'n, Inc. v. New York State Thruway Auth.*, 795 F.3d 351, 357 (2d Cir. 2015).  Relevant factors include:

> (1) the extent to which a judgment rendered in the [third party]'s absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the [third party]'s absence would be adequate; and (4) whether [Cofine] would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b); *Viacom Intern., Inc.*, 212 F.3d at 725; *Kulwicki v. Aetna Life Ins. Co.*, 720 F. Supp. 3d 108, 115 (D. Conn. 2024).  This is a "fact specific analysis." *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., Loc. 1500 v. Bristol Brass Co.*, 123 F.R.D. 431, 433 (D. Conn. 1989).

When assessing a Rule 12(b)(7) motion, like any motion under Rules 12(b) or 12(c), the Court must accept all factual allegations in the complaint as true and draw inferences in favor of the non-moving party.  *Kulwicki*, 720 F. Supp. 3d at 112.   The Court may consider evidence outside of the pleadings.  *Id.* at 111 n.1 (citing *Tross v. Ritz Carlton Hotel Co., LLC*, 928 F. Supp. 2d 498, 507 n.9 (D. Conn. 2013)).

B.  <u>Discussion</u>

1.  *Fed. R. Civ. P. 19(a)*

First, the Court holds that MML is not a "necessary" party under Fed. R. Civ. P. 19(a). Although McNish claims that MML's interest will somehow be impaired if this action proceeds without it, *see* ECF No. 27-1 at 8, that is not the case.

To start, complete relief for the alleged breach of contract may be afforded in MML's absence because Cofine seeks only money damages, which are entirely recoverable from McNish alone. *See Kulwicki*, 720 F. Supp. 3d at 116 ("where money damages are the only relief sought . . . complete relief can be afforded without an absent party"); *see also Glob. Disc. Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 708 (S.D.N.Y. 1997) (quoting Fed. R. Civ. P. 19(a) Advisory Committee Note) ("[T]he complete relief clause of Rule 19(a) was designed to 'stress[ ] the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court.'"). McNish's claim that a finding in Cofine's favor "would inevitably lead to additional litigation over the ownership" of the Trust Property that was transferred to Cofine's fiduciary under the Guaranty Agreement does not change that fact. *See* Def.'s Reply Br., ECF No. 33 at 2. While it is true that the relevant parties engaged in several complex financing transactions, the amended complaint alleges that McNish is personally responsible as guarantor and joint obligor for the *money* borrowed by MML under the Loan Agreements and promissory notes only. *See* ECF No. 17 ¶ 11– 13. Cofine has chosen to sue McNish to recover debts allegedly owed under the Loan Agreements and promissory notes, rather than attempting to leverage any disputed rights to the mortgaged Trust Property. *See* Opp. Mot. to Dismiss, ECF No. 32 at 3 ("This case arises under the loans," not "the collateral property") (emphasis and internal quotations omitted); *see also* ECF No. 17 ¶¶ 5, 8–9. And while McNish attempts to portray the Guaranty Agreement and the Loan Agreements as inextricably linked, *see, e.g.*, ECF No. 27-1 at 16 ("the Guaranty Agreement . . . is the focus of this litigation"), he does not explain how, in his view, the pledged real estate is "at the center of the dispute" under the Loan Agreements. ECF No. 33 at 2. Even the possibility of future litigation regarding the Trust Property does not render MML a necessary party. *See MasterCard Int'l Inc.*,

471 F.3d at 385 (finding, "[w]hile there is no question that further litigation [with a third party] . . . is inevitable," complete relief could be afforded among "those who are already parties"). Thus, the Court concludes it could afford complete relief between the parties to this action.

Second, MML does not have an interest in this action that may be impaired by its resolution, nor would resolution put McNish at substantial risk of multiple or inconsistent obligations. As to MML's interest in this litigation, the amended complaint contains only one cause of action, which focuses solely on *McNish*'s alleged breach of the Loan Agreements and promissory notes. *See* ECF No. 17 ¶¶ 26–32; ECF No. 32 at 8. While MML is a party to the Loan Agreements, Cofine has supplied a declaration from its Mexican counsel stating that McNish's role as joint obligor and guarantor permits Cofine to pursue him directly and individually for repayment of MML's debts, without exhausting any remedies it may have against MML under the Loan Agreements or pursuant to the Guaranty Agreement. *See* Decl. of Manuel Alejandro Guerrero Ávila, ECF No. 32-4, ¶ 10.[1] McNish represents that MML has raised issues in the Guaranty Agreement lawsuit in Mexico "concerning the enforceability of the loan documents," ECF No. 27-1 at 8, but, critically, does not draw any legal or logical connection between the enforceability of the Guaranty Agreement and the enforceability of the Loan Agreements. Thus, the Court cannot find that MML has any interest in this litigation that could be impaired by its resolution.

For similar reasons, McNish is not at substantial risk of multiple or inconsistent obligations. "Inconsistent obligations occur when a party is unable to comply with one court's order without

---

[1] McNish has also supplied a declaration from his Mexican counsel. *See* Decl. of Oscar M. Angulo Peña, ECF No. 27-1 at 110, ¶ 5. Attorney Peña's declaration states that the translation of Mexican Supreme Court jurisprudence provided with McNish's papers "fairly and accurately reflects the meaning and effect of the original Spanish-language text, including the constitutional principle that pursuing collection through an improper legal avenue may violate [McNish's] right to legal certainty under Article 17 of the Mexican Constitution." *Id.* McNish suggests that his right to constitutional certainty is also implicated in the present action, but its application to the present litigation remains somewhat unclear.

breaching another court's order concerning the same incident." *Yamaha Motor Corp. v. Ferrarotti*, 242 F.R.D. 178, 183 n. 4 (D. Conn. 2007). McNish has not articulated how the Court's resolution of the rights and liabilities of Cofine and McNish under the Loan Agreements would implicate the enforceability of the Guaranty Agreement, and *vice versa*. The Court cannot envision, and McNish has not offered, a scenario in which he would be unable to comply with this Court's order regarding the Loan Agreements without breaching another court's order concerning the same issues. Further, under Fed. R. Civ. P. 19(a)(1)(B)(ii), the Court considers only whether "existing part[ies]" will be subject to multiple or inconsistent obligations in the absence of a third party. McNish acknowledges that MML, not McNish himself, challenges the Guaranty Agreement in Mexico. *See* ECF No. 27-1 at 32–33 ¶ 12. Thus, even if McNish fails in this action while MML prevails in the Mexican litigation, *he* will not be subject to multiple or inconsistent obligations. Accordingly, MML is not a necessary party.

### 2. *Fed. R. Civ. P. 19(b)*

Although the Court need not consider whether MML is an indispensable party under Rule 19(b) given its conclusion above, it addresses this issue in the interest of completeness. Even if MML were a necessary party under Fed. R. Civ. P. 19(a), it would not be an indispensable party under Fed. R. Civ. P. 19(b).

In the Second Circuit, it is well-established that joint obligors are not indispensable parties. *See Greenleaf v. Safeway Trails*, 140 F.2d 889, 890 (2d Cir. 1944) ("[O]ne of several joint obligors is not an indispensable party to an action against the others."); *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 312 F.3d 82, 87 (2d Cir. 2002) ("We have held that Rule 19 does not mandate the joinder of joint obligors, because one of several joint obligors is not typically an indispensable party to an action against the others."); *see also Newman-Green, Inc. v. Alfonzo-*

*Larrain*, 490 U.S. 826, 838 (1989) ("[G]iven that all of the guarantors . . . are jointly and severally liable, it cannot be argued that [one of the guarantors] was indispensable to the suit.")).

Were this not a settled principle of law, application of Rule 19(b)'s four-factor test also indicates that MML is not an indispensable party.  "The Supreme Court has summarized Rule 19(b)'s four factors as follows: (1) whether the party sought to be joined has an interest in having a forum and whether an adequate alternate forum exists; (2) the interest of the party seeking joinder in avoiding 'multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another;' (3) 'the interest of the outsider whom it would have been desirable to join;' (4) 'the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.'"  *Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 494 (S.D.N.Y. 2002) (quoting *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 109–11 (1968)).

As to the first and third factors, as discussed above, MML has made no effort to intervene in the present action or otherwise demonstrated that it has an interest in this case, which weighs against finding it to be an indispensable party.  *See Fed. Ins. Co. v. SafeNet, Inc*., 758 F. Supp. 2d 251, 260 (S.D.N.Y. 2010) (noting that although an absentee party is "not obliged to intervene," the absence of a claimed interest by the absentee weighs against a finding of indispensability).  To the extent MML has an interest in having a forum, an adequate alternative forum exists in Mexico.  Indeed, MML has already pursued litigation in Mexico with respect to the Guaranty Agreement.  And to the extent MML has any interest in the present proceeding, McNish is the chairman of the Board of MML, ECF No. 27-1 at 32 ¶ 10; thus, McNish has full incentive to litigate any possible defenses MML may have to Cofine's breach of contract claim.[2]  As to the second factor, a judgment rendered in MML's absence will not prejudice McNish.  Because McNish and MML are

---

[2] McNish has not articulated any ways in which his interests may diverge from MML's with respect to their obligations to pay under the Loan Agreements and promissory notes.

jointly and severally liable to Cofine, there is no risk that McNish will be required to bear "sole responsibility for a liability" that he shares with MML. *See Universal Reinsurance Co.*, 312 F.3d at 88. Likewise, the fourth consideration—the "complete, consistent, and efficient settlement of controversies"—does not compel joinder, given that Cofine seeks monetary damages in the amount owed under the Loan Agreements and alleges that McNish's Connecticut assets may be used to satisfy any potential judgment. *See* ECF No. 17 at 6; *see Universal Reinsurance Co.*, 312 F.3d at 88 ("[D]ismissal of a claim for an inability to join additional parties is not warranted where complete relief is available from a remaining party."). Thus, even if MML were a necessary party, it would not be an indispensable one.

For these reasons, McNish's motion to dismiss is denied, insofar as it is brought under Rule 12(b)(7) for failure to join an indispensable party.

## III.    *FORUM NON CONVENIENS*

Although the Court has concluded that the action need not be dismissed for failure to join an indispensable party, it believes this action is best litigated in Mexico. Because the relevant private and public factors weigh in favor of resolution in the Mexican courts, the Court grants McNish's motion to dismiss on *forum non conveniens* grounds.

### A.  Legal Standard

*Forum non conveniens* permits a court to dismiss an action in its discretion, "even if the court is a permissible venue with proper jurisdiction over the claim." *Carey v. Bayerische Hypo– Und Vereinsbank AG*, 370 F.3d 234, 237 (2d Cir. 2004) (citation omitted). The Second Circuit has "established a three-step framework" for resolving a motion to dismiss on *forum non conveniens* grounds that requires: "(1) determining the degree of deference to be afforded to the [plaintiff]'s choice of forum; (2) examining whether an adequate alternative forum exists; and (3) balancing the private and public factors enumerated by the Supreme Court in *Gulf Oil Corp. v.*

*Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)." *Olin Holdings Ltd. v. State*, 73 F.4th 92, 109 (2d Cir. 2023). The defendant has the burden of demonstrating that the "balance of private and public interest factors tilts heavily in favor of the alternative forum." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 189 (2d Cir. 2009). Ultimately, the decision to dismiss a case on *forum non conveniens* grounds "lies wholly within the broad discretion of the district court[.]" *Scottish Air Int'l Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1232 (2d Cir. 1996).

    B. <u>Discussion</u>

        1. *Plaintiff's Choice of Forum*

    First, the Court recognizes that Cofine's choice of forum is entitled to deference, but that deference is reduced somewhat because Cofine is itself a Mexican corporation.

    In analyzing the first factor, courts "should begin with the assumption that the plaintiff's choice of forum will stand[.]" *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71 (2d Cir. 2001). But the "deference is not dispositive" and "may be overcome." *Id.* For instance, "a foreign resident's choice of a U.S. forum should receive less consideration," and even if it is not clear the foreign resident is forum shopping, "there is nonetheless little reason to assume [a U.S. forum] is convenient for a foreign plaintiff." *Id.* at 71. In other words, the "greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States," the more difficult it will be to justify dismissal on *forum non conveniens* grounds. *Id.* at 72.

    Here, Cofine's choice of forum is entitled to some deference. There is no indication that it engaged in forum shopping, given that this lawsuit has a specific connection to Connecticut: Cofine has chosen to sue McNish in his home jurisdiction, and where any judgment against him could (presumably) be easily enforced. *See id.* at 71–72 (noting that the "more it appears that a domestic or foreign plaintiff's choice of forum has been dictated by reasons that the law recognizes

as valid, the greater the deference that will be given to the plaintiff's forum choice"). Yet, because Cofine is itself a Mexican entity, its choice of forum is not given as much weight as it would be if Connecticut were its home forum. *See id.* at 71; *see also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981) ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable. Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

### 2. Adequate Alternate Forum

Next, the Court finds that Mexico is an adequate alternate forum.

"An alternative forum is generally adequate if the [respondent] is amenable to process there and the forum permits litigation of the subject matter of the dispute." *Florian v. Danaher Corp.*, No. 3:00-CV-897 (CFD), 2001 WL 1504493, at *1 (D. Conn. Nov. 20, 2001) (citing *Cap. Currency Exch., N.V. v. Nat'l Westminster Bank PLC*, 155 F.3d 603, 609 (2d Cir.1998)). Here, both criteria are satisfied. McNish acknowledges he is amenable to process in Mexico. *See* ECF No. 27-1 at 14. And Mexico is in fact the forum of choice in the Loan Agreements themselves.

Each of the Loan Agreements provides that the parties submit to the jurisdiction "of the competent courts in the City of Monterrey, Nuevo León," which is in Mexico. ECF No. 17-4 at 22; ECF No. 17-5 at 23; ECF No. 17-6 at 22.[3] Cofine is therefore hard-pressed to argue that a forum to which it contractually agreed is inadequate. *See Blanco v. Banco Indus. de Venezuela, S.A.*, 997 F.2d 974, 981 (2d Cir. 1993) ("It is at least anomalous for a Venezuelan corporation to

---

[3] The Loan Agreements alternatively provide for jurisdiction in the location of the "guarantees," *see,* ECF No. 17-4 at 22 and ECF No. 17-6 at 22, or the location of "the collateral," ECF No. 17-5 at 23. Neither party has provided any argument as to what forum that would be. Thus, the Court cannot conclude that Connecticut—McNish's home jurisdiction—was selected as an anticipated forum in the Loan Agreements. At oral argument, Cofine's counsel stated, for the first time, that the promissory agreements select McNish's home forum for litigation. But absent an English translation of those agreements and an argument properly raised in briefing, the Court cannot rely on counsel's mere representation.

contract with a Venezuelan bank for the financing of a housing project in Venezuela, specify in both pertinent contracts that litigation concerning them may be brought in Venezuela, and then argue to an American court" that Venezula did not provide an "adequate forum for the resolution of such contractual disputes"); *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234, 238 (2d Cir. 2004) (where German resident entered into a contract financing a "long-term investment in German real property," and the parties agreed to submit to the jurisdiction of German courts in the event of a dispute, the circumstances "reasonably [gave] rise to the expectation on all sides that any litigation arising from them [would] be conducted in Germany.").

Instead, Cofine contends that McNish's counsel's saying that Mexico is adequate does not make it so. ECF No. 32 at 22. But, given that the parties' forum selection clause selects Mexico for adjudication of disputes; that the Loan Agreements are governed by Mexican law; that McNish is subject to process in Mexico; and that there is no evidence in the record to suggest a Mexican forum is inadequate, the Court finds there is an adequate alternate forum.

     3. *Private and Public Factors*

Finally, the Court finds that the private and public factors weigh in favor of dismissing this action on *forum non conveniens* grounds.

The private factors support dismissal. These factors are: "(1) the relative ease of access to sources of proof; (2) the convenience of willing witnesses; (3) the availability of compulsory process for attaining the attendance of unwilling witnesses; and (4) the other practical problems that make trial easy, expeditious, and inexpensive." *Olin*, 73 F.4th at 109. With respect to access to the sources of proof, the Court recognizes that, "'[i]n light of technological advances in transportation and communication, . . . the location of documents'" is given less weight now. *Star Colbert v. Dougan*, 724 F. Supp. 3d 304, 329 (S.D.N.Y. 2024) (quoting *Shtofmakher v. David*, No. 14-CV-6934, 2015 WL 5148832, at *3 (S.D.N.Y. Aug. 17, 2015). But, still, it is likely most of

the relevant documents would be located in Mexico, given that the agreements were negotiated in Mexico, involved a complex series of secured transactions under Mexican law, and included a forum selection clause choosing Mexico for any litigation.

And McNish convincingly argues that all of the relevant witnesses—except perhaps for McNish—are located in Mexico, including Cofine's principals and employees, relevant Mexican bankers, notaries, and lawyers. *See* ECF No. 27-1 at 16–17. If trial were to occur here, all of these witnesses except McNish would need to travel from Mexico to Connecticut. And at least some will be likely be beyond the subpoena power of the Court. *See Carey*, 370 F.3d at 238 (upholding *forum non conveniens* dismissal where, among other factors, the defendant could not be assured that non-party witnesses would be willing to come to the United States to testify). Cofine attempts to minimize the need for witness testimony, contending that this is effectively an open-and-shut breach of contract action. *See* ECF No. 32 at 24–25. But the Court cannot discount the possibility that it may require witness testimony about, for example, the parties' intent as to the meaning of contract terms, or about relevant defenses to contract formation or enforcement. Thus, the Court finds that the private factors weigh in favor of dismissal on *forum non conveniens* grounds.

The relevant public factors weigh even more heavily in McNish's favor. The public interest factors the Court must consider are: "(1) court congestion; (2) avoiding difficult problems in conflict of laws and the application of foreign law; (3) the unfairness of imposing jury duty on a community with no relation to the case; and (4) the interest of communities in having local disputes decided at home." *Olin*, 73 F.4th at 109–10. The Court finds that the second and fourth factors support dismissal, and weighs the second—involving the application of foreign law—most

heavily here.[4]  *See Scottish Air Int'l, Inc.*, 81 F.3d 1224, 1232 (2d Cir. 1996) ("When deciding a *forum non conveniens* motion, a court may properly rely on the difficulties attending the resolution of questions of foreign law.").

The Loan Agreements and promissory notes under which Cofine sues here are part of a series of secured transactions entered into between Cofine, MML, and McNish, among other entities.  There is no dispute that the Loan Agreements (and the Guaranty Agreement being litigated in Mexico) are governed by Mexican law, and were originally drafted in Spanish.  The Court has received English translations of the Loan Agreements and the Guaranty Agreement, but not of the promissory notes, making any arguments based on those notes impossible for the Court to decide at this juncture.  A Mexican court would have the advantage of being able to interpret the relevant Loan Agreements and any other pertinent Spanish documents in its native language— and in the language in which the parties drafted the agreement.  *See Blanco*, 997 F.2d at 982 (recognizing that translation of documents into English, in addition to increasing costs, results in "delay to the court," and "militates strongly" in favor of *forum non conveniens* dismissal); *City of Ouro Preto v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 751 F. Supp. 3d 356, 377 (S.D.N.Y. 2024) (noting that relying on the accuracy of translations to assess the evidence would be a "costly, difficult endeavor").

Moreover, a Mexican court is better suited to interpret Mexican law.  The parties have already forecasted a significant dispute about whether Cofine can pursue the relief sought in this action without first suing MML.  Cofine has provided a declaration from its Mexican lawyer that

---

[4] Neither party has made a jury demand, so the third public interest factor does not apply.  McNish argues that keeping the action here would contribute to court congestion in Connecticut, *see* ECF No. 27 at 20, but offers no evidence about the relative congestion of Mexican courts and Connecticut federal courts.  Thus, the Court does not weigh this factor heavily.  *See Star Colbert*, 724 F. Supp. 3d at 336 (finding that court congestion was not a significant factor where the parties did not offer evidence comparing court congestion in the two jurisdictions).

McNish's status as a joint obligor renders the Mexican doctrine of *excusión*—which the lawyer's affidavit does not define—inapplicable here, *see* Ávila Decl., ECF No. 32-4 ¶¶ 9–10.  McNish's Mexican lawyer, on the other hand, states that McNish's position regarding the "constitutional principle of legal certainty," which is at issue in the pending Mexican litigation and—McNish suggests—in this litigation as well, is "consistent with established Mexican jurisprudence."  *See* Peña Decl., ECF No. 27-1 at 111, ¶ 8.[5]

The Court is not well-positioned to opine on Mexican law—constitutional or otherwise. *See Gulf Oil Corp.*, 330 U.S. at 509 (recognizing that it is appropriate to have the "trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in . . . law foreign to itself").  At this juncture, neither Mexican lawyer has provided the sources of law from which they derive their opinion.  But even if the parties' Mexican legal experts were to provide their underlying sources of law, those sources would likely be in Spanish and would need to be translated into English, and the Court would have no method for independently verifying the state of Mexican law.  In cases on its docket, the Court regularly conducts its own legal research to ensure it is fully understanding the relevant law and that the parties are referencing the proper authorities.  It would lack the ability to conduct any such research meaningfully in this action, and would instead be reliant solely on the submissions of the parties.  The Court has already identified significant gaps in the parties' submissions, with Cofine's failure to provide English translations of the promissory notes and a definition of the Mexican law concept of *excusión*, and McNish's failure to fully explain the

---

[5] It is not clear to the Court, as Cofine argues, that a purported Mexican constitutional right would be deemed a *procedural* matter, such that the Court would ignore it and apply its own rules of procedure.  *See* ECF No. 32 at 15 (citing *Bournias v. Atl. Maritime Co.*, 220 F.2d 152, 154 (2d Cir. 1955) for the proposition that the forum applies foreign substantive law, "but will follow its own rules of procedure").  Thus, deciding *whether* the constitutional right to legal certainty is substantive or procedural will be an initial hurdle for this Court.

application of the constitutional principle of legal certainty to this action. And even though Cofine contends that the elements of a breach of contract action are the same under Mexican law and Connecticut law, that is only one small dimension of what the Court may be called upon to decide here. There is a greater risk that the Court may misinterpret Mexican law than that a Mexican court would. Additionally, judicial efficiency weighs in favor of dismissal: a Mexican court would likely be able to decide the Mexican law issues posed by this case more quickly and effectively than the undersigned would, given the Court's unfamiliarity with Mexican law, the need for translation of relevant sources of law, and the Court's relative inability to conduct firsthand legal research to verify its conclusions are correct.

Cofine relies on two cases to support its argument that the Court can properly apply Mexican law, but both are inapposite. First, in *Norte v. Worldbusiness Capital, Inc.*, No. 14-CV-10143 (CM), 2015 WL 7730980, at *14 (Nov. 24, 2015), the court made a point of noting that no party had moved for *forum non conveniens* dismissal—and, importantly, expressed skepticism about whether the Southern District of New York "should be the forum for litigating claims arising under Mexican law concerning a Mexican transaction." *Id.* And in *Taylor Devices, Inc. v. Walbridge Aldinger Co.*, 538 F. Supp. 2d 560, 584, 584 n.18 (W.D.N.Y. 2008), the court acknowledged it could apply Mexican law, but that New York law was likely to be applicable to the dispute.

Finally, Mexico has an interest in having this essentially local dispute decided there. At bottom, the Loan Agreements are contracts between two Mexican companies, financed by a Mexican banking institution and secured in part by real property in Mexico. This action's only connections to Connecticut are McNish's residence and alleged property ownership in the state, which does not create a strong local interest in this forum. *See Blanco*, 997 F.2d at 892 (finding

little local interest in New York where the "sole connection to the local forum . . . is the fact that payments under the Loan Agreement were to be made in dollars in New York City"); *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 76 (2d Cir. 2003) (New York's "generalized interest in overseeing the [Defendant] bank," which was headquartered in the state, did not "create[] any strong local interest").  The agreements were formed and signed in Mexico, and McNish was required to travel to Mexico to sign them in person.  *See* ECF No. 27-1 at 31 ¶ 4. The Loan Agreements relate to the development of a Mexican business entity and involve transfers of interests in real property located in Mexico.  And the alleged breaches will not impact U.S. entities, but may very well impact Mexican entities—Cofine, MML, and Bancomext, a Mexican state-owned bank.  *See* ECF No. 17-5 at 6 (affirming the second Loan Agreement would be funded by Bancomext); ECF No. 17-6 at 6 (same, for the third Loan Agreement).  The parties are also litigating about the related Guaranty Agreement in Mexico.  For these reasons, a Mexican court has a stronger interest in the oversight of these contractual disputes than does this Court.  *See Pollux Holding Ltd.*, 329 F.3d at 76–77 (affirming dismissal on *forum non conveniens* grounds where, among other things, another forum had a stronger local interest in the dispute); *Gunnebo Lifting A.B. v. Vetterlein*, 814 F. Supp. 231, 233 (D. Conn. 1992) (finding that Sweden had a stronger interest in a breach of contract dispute involving Swedish law and ongoing contract dispute resolution events in Sweden).  Mexico also has an interest in the correct interpretation of its law.

For these reasons, the Court concludes that the balance of the relevant factors tilts heavily toward litigating the relevant issues in Mexico.  While the Court acknowledges that it may take time and expense to domesticate any judgment Cofine might obtain against McNish in Mexico, Mexico remains the appropriate place for this action—involving a Mexican company suing the

guarantor of loans to another Mexican company under agreements governed by Mexican law and containing a Mexican forum selection clause—to be litigated. Thus, dismissing this action on *forum non conveniens* grounds is appropriate.

## IV.    CONCLUSION

For the reasons described in this ruling, McNish's motion to dismiss is GRANTED. The Clerk is directed to enter judgment in favor of McNish and close this case.

**SO ORDERED** at Hartford, Connecticut, this 9th day of February, 2026.

 */s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE